ZAPPALA GROUP, INC., Agents for Pine Creek Properties, L.P., Appellant,

v.

The ZONING HEARING BOARD OF THE TOWN OF McCANDLESS.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 2002.

Decided Nov. 14, 2002.

As Amended Nov. 15, 2002.

Kevin G. McKeegan, Pittsburgh, for appellant.

J. Howard Womsley, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Zappala Group, Inc., Agents for Pine Creek Properties, L.P., (Pine Creek) appeals from an order of the Court of Common Pleas of Allegheny County (trial court) affirming the decision of the Zoning

Hearing Board of the Town of McCandless (Board) denying Pine Creek's request for variances needed to construct office buildings on property located in the Town of McCandless (Town).

On October 3, 2000, Pine Creek submitted a proposal to the Board seeking to build two three-story office buildings connected by an atrium, having a combined square footage of 42,760 square feet and parking for 143 vehicles on an 8.75 acre tract of land in the Town.[1] The property is a steeply sloped vacant tract of which 5.7 acres would need to be disturbed for the proposed construction; 3.9 acres of the property has slopes of 25% or more and 2.9 acres of the property has slopes of 16% to 25%. Slopes of over 20% are considered marginal for development.

Under the Town's Zoning Ordinance (Zoning Ordinance), the property is zoned D–Development District. The construction of office buildings is a permitted use in the D–Development District,[2] but a site capacity analysis is required to determine intensity of use prior to development of any property in the district. Pursuant to Section 1314.03(a) of the Zoning Ordinance, a site capacity analysis requires an applicant to (1) determine the base site area, (2) determine the sensitive natural resources that shall be preserved and (3) determine the site capacity or buildable land based on the first two calculations. The Zoning Ordinance specifically provides that a goal of the zoning scheme is to preserve the natural topography and wooded slopelands of the area. Zoning Ordinance Section 1311.02(b). In applying this analysis, the parties agree that there is a base site area of 7.65 acres, a resource

protection land of 5.47 acres, and buildable land of 2.18 acres. The only dispute between the parties is how much land may be disturbed during the construction process.

On October 24, 2000, the Land Use Administrator informed Pine Creek that based upon the Town's interpretation of certain sections of its Zoning Ordinance, he recommended that Pine Creek revise its application to the Town for its site plan as well as its application to the Board. Because the term "buildable land" was not defined in the Zoning Ordinance, Pine Creek filed a notice of appeal with the Board seeking an interpretation of the term "buildable land" in Section 1314.03(a) of the Zoning Ordinance, and requested variances so it could disturb more of the property than permitted in the Zoning Ordinance to construct its proposed building due to the slopes of the land alleging that "buildable land" represented a temporary calculation used to determine the actual limitations on development. In opposition, the Town contended that "buildable land" was the area of the base site minus the resource protection land, or 2.18 acres. As to the variances, Pine Creek requested that it be able to disturb 5.7 acres to construct its proposed building due to the slopes of the land, because it sought to create a buildable pad out of the slopes requiring 2:1 fill slopes and 1.5:1 cut slope. The Zoning Ordinance required a maximum of 4:1 fill slopes and 2:1 cut slopes. Zoning Ordinance § 1314.03(c).

■ Before the Board, Rob Robinson (Robinson), an architect at Urban Design

---

1. A 1.1 acre portion of the property has a house on it, so the remaining available area is 7.65 acres.

2. The D–Development District is a performance zoning district that permits a wide range of uses but is governed by standards designed to protect the sensitive natural resources of the area and to buffer adjacent properties from dissimilar uses and intensities of development.

Associates, testified that the intent of the Town in creating the D–Development District was to protect the natural resources sensitive to development such as forests, steep slopes, flood plains and streams. Robinson also testified that "buildable land" equals the area a developer is permitted to disturb, and, in this case, that area was only 2.18 acres. Relying on Robinson's testimony, the Board found that the term "buildable land" was not ambiguous, that it amounted to 2.18 acres of the subject property and voted to deny the requested variances because they would be a serious departure from the Zoning Ordinance due to the characteristics of the property, including the steep slopes and vegetative growth. Pine Creek appealed to the trial court, which affirmed the Board's decision. This appeal followed.[3]

■ Pine Creek first contends that the Board erred in interpreting "buildable land" to allow only disturbance of more than the buildable site, because that term is not defined in the Zoning Ordinance and its meaning was not clear, and, as the Board found, it must be construed to allow the broadest possible use of the land. It argues that the Board's interpretation would create a separate overall limitation on development beyond the express limitations of the Zoning Ordinance. While it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words. *Phillips v. Zoning Hearing Board of Montour Township,* 776 A.2d 341 (Pa.Cmwlth.2001). Further, zoning ordinances should be construed in a sensible manner. *Id.*

■ We agree, though, with the Board that the term "buildable land" as that term is used in the Zoning Ordinance refers to the area that can be disturbed by the construction of the building. Under the Zoning Ordinance, a site capacity analysis is required under the D–Development District, the base site area, which is the total available area for development, and the resource protection area, which is the area that, due to slopes or other characteristics, is unable to be regraded or developed in any way, are calculated. Because it is so steeply sloped, the subject property has a resource protection area of 5.47 acres that cannot be disturbed. That area then is subtracted from the total base site area of 7.65 acres to arrive at the total "buildable land;" anything that remains is "buildable land," i.e., 2.18 acres that may be disturbed for development. If we were to decide otherwise would mean that part of the property that was designated resource protection area, because it was too steep, could be excavated, making the slope even more severe than the slope that previously existed, a result that is at odds with the whole intent of the zoning scheme—to preserve the natural topography and wooded slopelands of the area.

Pine Creek also contends that the Board erred in concluding that it requested use rather than dimensional variances because the requested variances did not involve non-permitted uses but involved dimension because they related to the topography of the property. Because the Board concluded that Pine Creek requested use variances, Pine Creek also contends that the Board abused its discretion in finding that it did not meet the requirements for granting its requested variances because it

---

**3.** Because the trial court took no additional evidence, our standard of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Rabe-*

*nold v. Zoning Hearing Board of the Borough of Palmerton,* 777 A.2d 1257 (Pa.Cmwlth. 2001).

showed an "unnecessary hardship" under the lesser burden of proof for dimensional variances.

 Whether an applicant is seeking a dimensional or use variance, it must show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. *Hertzberg v. Zoning Hearing Board of Adjustment of the City of Pittsburgh,* 554 Pa. 249, 721 A.2d 43 (1998). It is only the stringency of the standard in proving an unnecessary hardship that varies, depending on whether a use or dimensional variance is sought. *Id.* Pine Creek's proposed use is indisputably permitted in a D–Development District because the nature of the district is to provide for a wide range of uses only constrained by the site capacity analysis and consideration of the natural resources found in this type of zoning area. However, the D–Development District prohibits uses of the land that are outside the strictures on protecting natural resources, including steep slopes. Because this scenario is not like setbacks or other traditional dimensional variances and is not like seeking a use for the property outside of the uses enumerated in the Zoning Ordinance, it falls into a grey area. However, whether we consider the request to be for a use or dimensional variance does not matter because, even under the looser dimensional variance standard, Pine Creek has still failed to make its case.[4]

In *Yeager v. Zoning Hearing Board of the City of Allentown,* 779 A.2d 595 (Pa. Cmwlth.2001), we reviewed the standards enunciated in *Hertzberg* and found that:

Ever since our Supreme Court decided *Hertzberg,* we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes,* so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship. It may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by *Hertzberg,* bears emphasizing in the present case. A variance, whether labeled dimensional or use, is appropriate "only where the *property,* not the person, is subject to hardship." *Szmigiel v. Kranker,* 6 Pa.Cmwlth. 632, 298 A.2d 629, 631 (1972) (emphasis in original). In the present case, Daniels' property is well suited to the purpose for which it is zoned and actually used, a car dealership, which is in no way burdened by the dimensional requirements of the ordinance. Daniels has proven nothing more than that adherence to the ordinance imposes a burden on his personal

4. *Hertzberg* provides that to justify the grant of dimensional variances, courts may consider multiple factors, including "the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." In determining whether unnecessary hardship has been proven for a use variance, a court may consider whether "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance."

desire to sell vehicles for Land Rover. As this court recently noted: [W]hile *Hertzberg* eased the requirements ... it did not make dimensional requirements ... "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were the case, dimensional requirements would be meaningless—at best, rules of thumb—and the planning efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time. *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment,* 771 A.2d 874, 878 (Pa.Cmwlth.2001).

*Id.* at 598.

Pine Creek's proposed use would require reconfiguration of 72% of the base site area so that the office buildings could be constructed in the way it envisions, more than the *de minimis* amount that *Hertzberg* envisions. Moreover, the Zoning Ordinance does not wholly limit Pine Creek's ability to develop the land, but because of the amount of resource protection area, limits the area able to be disturbed for development to 2.18 acres. Pine Creek has not proven that it will suffer an unnecessary hardship if it is unable to develop the land in accordance with its proposed use, let alone establish that such a result would not be adverse to the public welfare.

Accordingly, the decision of the trial court is affirmed.

### ORDER

AND NOW, this *14th* day of *November,* 2002, the decision of the Court of Common Pleas of Allegheny County, No. S.A. 01–443, dated March 20, 2002, is affirmed.

### DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent. Herein, the Zoning Ordinance does not define the term "buildable area" or "buildable land." As such, the Board was called upon to interpret the meaning of the term "buildable land." While the majority agrees with the Board's interpretation, I believe that the Board's interpretation of the zoning ordinance is not reasonable.

The Board determined that "buildable land" equals the area a developer is permitted to disturb by the construction of a building. In other words, a developer may not disturb more than the actual buildable site. However, in interpreting the zoning ordinance, I believe the Board should have taken into consideration the final outcome and how that final outcome complies with the intent of the ordinance to protect the natural resources sensitive to development such as forests, steeps slopes, flood plains and streams. This approach would surely be in keeping with the principle that zoning ordinances are to be liberally construed to allow the broadest possible use of land. In the instant matter, a review of the plans submitted by Pine Creek clearly shows that the goals and purposes of the zoning ordinance would be maintained in the end. Accordingly, I would reverse the trial court's order.