### KEN–MED ASSOCIATES

v.

### BOARD OF TOWNSHIP SUPERVISORS OF KENNEDY TOWNSHIP and Keith Rose.

### Appeal of: Keith Rose.

Commonwealth Court of Pennsylvania.

Argued May 9, 2006.

Decided June 2, 2006.

---

Samuel P. Kamin, Pittsburgh, for appellant, Keith Rose.

Edward R. Lawrence, Jr., Coraopolis, for appellee, Ken–Med Associates.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge COHN JUBELIRER.

Keith Rose, a neighboring property owner and Intervenor below (Neighbor), appeals from an order of the Court of Common Pleas of Allegheny County (trial court) which, after taking additional evidence, reversed the decision of the Zoning Hearing Board of Kennedy Township (ZHB) denying a dimensional variance application filed by Ken–Med Associates (Landowner). Landowner seeks to alleviate a parking shortage, caused by an increased number of practicing physicians and a corresponding parking space requirement, by constructing a three-story, four-level parking garage, which would necessitate a variance from a 35′ rear yard setback requirement between the commercial use on its property and the abutting residential lot in the residential district.

Landowner, a three-person partnership, constructed the four-story Kennedy Medical Arts Building located at 1800 Forest Grove Road, Coraopolis, Pennsylvania (Property), which is at issue here, in 1994, and continues to own and operate it. The Property is located within Kennedy Township's (Township) C–1 Commercial District, but the rear of the Property abuts the Township's R–1 Residential District.

In 1994, Landowner received approval from the Township for the use and construction of the Property. The Township's approval provided that, with its 88 on-site parking spaces, the Property was in compliance with the parking space requirement found in Section 1102.12 of the Zon-

ing Ordinance of the Township of Kennedy (Ordinance) which, for medical offices, requires three parking spaces for each physician and one parking spot for every two regular employees. There have been no amendments to the Ordinance and no physical expansions on the Property since its original construction, although more physicians now practice at the Property than when it was originally constructed.

Landowner, since construction of the Property, made prior attempts to alleviate parking difficulties. In 1995, Landowner entered into a fifteen-year parking license agreement for the use of 28 additional off-site parking spaces with a neighboring property owner, a partnership named CVS, which subsequently sold that property to Allegheny Valley School (AVS). The parking license for the 28 parking spaces will terminate in 2010 and, although requested, AVS will not renew the license. Landowner also has an oral agreement with the Township Fire Department for the use of 48 off-site parking spaces at the neighboring Kennedy Township Fire Hall. Landowner attempted to enter into a written lease for the 48 parking spaces with the Fire Department, but they refused. (Trial Ct. Trans. at 73.) The record also establishes that Landowner purchased another property across the street, but did not receive approval to use it for parking because of stormwater management issues. (Trial Ct. Trans. at 73–74.)

In May 2003, the Township Manager, Paul H. Bingham, wrote to one of the Landowner partners and informed him that they had insufficient parking for the Property, as required by the Ordinance. Bingham described the situation as "an accident waiting to happen." (Letter from Paul H. Bingham, Township Manager, to Dr. Edward Sebastian, Ken–Med Associates (May 29, 2003).) One of the Landowner partners described the parking situation as:

> It's a real zoo over there.... [T]hey are parking in the street, parking on top of each other. We'd had a lot of wrecks. We've had notification from the insurance company that something has to be done or they're going to drop our insurance because there's just not enough spaces.
>
> And one of the doctors ... said he may have to move out because his patients can't get in and out, and his hours are delayed more and more and more, and they—*the real problem is they keep getting more patients in the building.*

(Trial Ct. Trans. at 76–77 (emphasis added).) After receiving the May 2003 letter from the Township Manager, Landowner retained the services of a registered architect, Joseph J. Balobeck, from Architect Developer Inc., who apprised them, by letter dated May 31, 2003, that, with the Property's current number of practicing physicians and employees, the Property required 127 parking spaces to be in conformity with Section 1102.12 of the Ordinance.

The Property, as originally approved, has 88 on-site parking spaces. Landowner desires to replace 40 existing ground level parking spaces at the rear of the Property with a four level parking garage, which would bring the total number of on-site parking spaces at the Property to 127. Landowners submitted an application for a variance in July 2003, "requesting that the 35 foot Buffer Yard requirement stated in Section 506.2 of the Zoning Ordinance be reduced to a 10 foot Buffer Yard to allow construction of a 4 level parking garage."[1]

---

1. Landowner conceded at argument that it could build a parking garage in conformity with the set-back requirements, but it would be economically unfeasible to do so.

(Letter from Mark Schmidt of Hampton Technical Assoc., Inc. to ZHB (received August 7, 2003) (Variance Application Ex. "D").) Section 506.2 of the Ordinance provides for the separation of commercial and residential uses through the creation of a buffer zone by requiring that "[w]hen a side, front or rear yard abuts property in a "R" District ... [i]t shall be screened from such "R" District by a fence, masonry wall or solid fence ... and have a side and rear yard of at least thirty-five (35) feet."

The general provisions governing variance requests are found in Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC).[2] Those provisions authorize a zoning hearing board to grant a requested variance where:

(1) an unnecessary hardship will result if the variance is denied, due to unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

Twp. of Harrison v. Smith, 161 Pa. Cmwlth. 166, 636 A.2d 288, 290 (1993) (applying Section 910.2(a) to a dimensional variance request). In addition, our Supreme Court, in Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh, "relaxed" the review of dimensional variance applications when it held that courts may consider multiple factors, including:

the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood.

554 Pa. 249, 264, 721 A.2d 43, 50 (1998).

On September 24, 2003, a hearing was held before the ZHB, which ultimately denied the requested variance. The ZHB concluded, inter alia: that the Landowner's evidence as to the lack of off-site parking was not credible or compelling; that the Property, with the available on-site and off-site parking, is currently in compliance with the requirements of the Ordinance, thus there was no need for a variance; that the variance requested would be a substantial departure from the requirements of the Ordinance, thus would not be de minimis; and, that there were no unique physical conditions of the Property which would necessitate a variance. (ZHB Conclusions of Law (COL) ¶¶ 28–33.)[3] The ZHB also concluded that, even

2. Act of July 31, 1968, P.L. 805, as amended, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

3. To support its determination, the ZHB cited to and discussed Hill District Project Area Committee, Inc. v. Zoning Board of Adjustment of City of Pittsburgh, 162 Pa.Cmwlth. 323, 638 A.2d 278 (1994) (applying the principle that a variance should not be granted simply because it would allow an owner to attain greater profit from the use of property), which reasoned that a business was not entitled to

use and dimensional variances for the construction of a multi-story parking lot in a residential zone because it failed to establish: more than a mere economic hardship, that the property could not be developed as zoned, and that the variance was not the minimum variance to afford relief. The ZHB also cited and discussed Zappala Group, Inc. v. Zoning Hearing Board, Town of McCandless, 810 A.2d 708 (Pa.Cmwlth.2002), which emphasized that a successfully established unnecessary hardship will attend all uses of property, not just a particular landowner's individual de-

if Landowners were able to establish that it no longer has a relationship with the Fire Department, there was no testimony that the Property, with its current on-site parking spaces, could not be used in conformance with the Ordinance. (COL ¶ 35.) As for the proposed four-level parking garage's impact on the abutting residential district, the ZHB concluded that the garage would alter the essential character of the neighborhood and substantially impair the appropriate use and development of the abutting residential properties, which are to be benefited by the 35 foot setback/buffer zone area. (COL ¶¶ 36, 37.)

■ Landowner appealed to the trial court, which, after taking additional evidence,[4] reversed the ZHB and granted the requested variance. The trial court made, *inter alia*, the following findings of fact[5] regarding parking for the Property:

Based on the requirements of [Section 1102.15 of the Ordinance], the Ken–Med Building requires approximately 130 parking spaces. The evidence shows that Ken–Med has tried to improve the parking situation. Currently, Ken–Med has 40 spaces in the rear of the building and 47 spaces along the side and front yard. Also, Ken–Med has access to 28 spaces pursuant to a *lease agreement with AVS, which will expire in 2010.* They attempted to renew the lease or purchase a portion of AVS' property, to no avail. Ken–Med also has an oral agreement to park in the rear of the Kennedy Township Fire Department's property, which gives them 48 spaces. However, events at the fire station dur-

ing regular business hours have created an inconvenience as well as serious traffic problems for Ken–Med's tenants and patrons as well as the general public. Additionally, there is *no assurance of future parking at the fire department.* Finally, Ken–Med owns property across the street from the Ken–Med building known as "White House" real estate. However, that property cannot be used for off-site parking due to danger to patrons crossing Pine Hallow Road and storm water runoff problems.

(Trial Ct. Op. at 2–3 (emphasis added).) The trial court concluded that the evidence presented warranted the granting of a variance, as established in Section 910.2 of the MPC, because:

Ken–Med's property is unique because it is narrow and it slopes steeply in the rear portion which prohibits development. Due to these physical conditions, Ken–Med may not develop the property in strict conformity with the Ordinance. Ken–Med's hardship was created by the sale of AVS and the parking problems at the fire station. Granting of the variance will not alter the essential character of the neighborhood or impair appropriate use of the adjacent property. Trees will be planted along the rear lot lines of Ken–Med's property. Additionally, Ken–Med's property at the rear lot line drastically slopes down and the adjacent residential property is approximately 15 feet below. The variance will positively impact the safety and welfare of the general public as it will alleviate many of the dangerous road conditions in the area. Additionally, the variance

---

sire, and warned against interpreting *Hertzberg* as creating "free-fire zones" for dimensional variances.

4. The record indicates that Edward Sebastian, who is the managing partner of Landowner, was at the ZHB hearing, but was sick

and his wife was in the hospital, which caused him to leave the hearing early. (Trial Ct. Trans. at 64–65.)

5. The trial court did not make findings of fact or conclusions of law in numbered-paragraph form.

is the minimum variance that will afford relief. Finally, the paved surface currently used for parking at Ken–Med has been approved and, therefore, the parking garage would be a "vertical extension" of the use.

(Trial Ct. Op. at 4.) Neighbor appealed the trial court's decision, to reverse the ZHB and grant the requested dimensional variance, to this Court.[6]

Before this Court, Neighbor argues that the trial court erred in: (1) finding an unnecessary hardship; (2) determining that the property cannot be developed in strict conformity with the Ordinance; (3) not finding that the Landowner created the hardship; (4) finding that the requested variance would not alter the essential character of the neighborhood or represent the minimum variance that would afford relief; and (5) applying non-conforming use jurisprudence.

■ We first address Neighbor's argument that any hardship suffered by the Landowner in this case is an impermissible self-inflicted hardship. Neighbor makes a two-prong argument as to Landowner's alleged self-inflicted hardship: first, that the hardship arises from a personal desire to maximize the Property's profitability, and, second, that Landowner's own actions caused it to lose off-site parking.

Neighbor argues that uncontroverted evidence establishes that a general increase in business, and the corresponding addition of further physician tenants at the Property, is the only reason the Property needs additional parking. Neighbor emphasizes that Landowner possesses the ability to reduce the occupancy of the Property to reflect its approved 1994 occupancy approval.

Neighbor believes this case is analogous to *Cohen v. Zoning Board of Adjustment of City of Philadelphia*, 3 Pa.Cmwlth. 50, 276 A.2d 352 (1971), wherein this Court denied a variance request made by a doctor who had "outgrown" his present building and sought to expand his practice by expanding his building. Similar to the facts in *Cohen*, Neighbor argues that the facts here establish nothing more than an owner who has outgrown his building and is impermissibly seeking to expand his business through attainment of a variance.

Landowner, on the other hand, asserts that a natural expansion of the neighborhood demand for its services created the unnecessary hardship and believes the facts of this case are analogous to *Daley v. Zoning Hearing Board of Upper Moreland Township*, 770 A.2d 815 (Pa.Cmwlth. 2001). In *Daley*, a church sought to expand its parking, but needed a variance to allow a buffer zone of 5 feet instead of 50 feet as required by the ordinance. This Court, applying the relaxed dimensional variance standard articulated in *Hertzberg*, held that the zoning hearing board had correctly granted the variance because the church established that its current insufficient parking prevented the reasonable use of its property and created an unnecessary hardship. In particular, the Court reasoned that the church did not create the parking problem because, since its construction in 1918, the surrounding neighborhood had changed, which caused the parking problem and created the unnecessary hardship. *Daley*, 770 A.2d at 820.

---

6. "Where the trial court [takes] any additional evidence on the merits it must determine the case *de novo,* making its own findings of fact based on the record made before the board as supplemented by the additional evidence; this Court must then determine on appeal whether the trial court, not the [ZHB], committed an error of law or an abuse of discretion." *Mitchell v. Zoning Hearing Bd. of the Borough of Mount Penn*, 838 A.2d 819, 825 (Pa. Cmwlth.2003).

Landowner argues that here, similar to the facts in *Daley*, the need for additional parking resulted from a normal increase in patients. Landowner, moreover, thinks it is absurd to suggest that it resolve its parking problems by eliminating tenants, even though the building is occupied as designed and approved. We disagree.

■ Landowner's efforts to obtain a variance, which would allow for a greater number of physicians to practice at the Property and a general expansion of the Property's profitability, is nothing less than an impermissible attempt to attain a variance to maximize the economic value of the Property. This Court, time and again, has held that expanding the use of a particular property to maximize profitability is not a sufficient hardship to justify the granting of a variance, because such financial hardship is a form of self-inflicted hardship relating to a landowner and not, as required by the MPC, the property. *See Cohen; see also Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 894 A.2d 845 (Pa.Cmwlth.2006) (finding an impermissible self-inflicted hardship where a landowner desired to completely use a single family residence as a more profitable office use and knew or should have known that his desired, complete operation of an accounting office was not permitted in that particular district); *One Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Philadelphia*, 867 A.2d 706 (Pa. Cmwlth.2005) (rejecting a landowner's assertion that a strict application of the city's floor area ratio and height requirement would result in landowner not being able to build enough apartments, which would make the property economically unfeasible, and warrant the granting of dimensional variances); *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595 (Pa.Cmwlth.2001) (reasoning that claimed hardship resulted from the land-owner's personal desire to operate an automobile dealership that would conform with a particular manufacturer's requirements, which was a hardship that did not relate to the property, and did not warrant the granting of a dimensional variance); and, *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment*, 771 A.2d 874, 877–78 (Pa.Cmwlth.2001) (reasoning that dimensional variances should not be granted "when the party seeking the variance merely articulated a reason that it would be financially 'hurt' if it could not do what it wanted to do with the property, even if the property was already being occupied by another use"). While Landowner argues that the conditions in the neighborhood, with its aging population and the corresponding increase in use and demand for the Property, have led to their need for more parking, a very similar argument was made and rejected in *Cohen*, where the landowner requested a variance to expand his medical office to meet the growing needs of his patients. The Property was, is, and can continue to be used as a medical office, but with the number of physicians limited to its on-site parking and original approval. Expanding the number of practicing physicians at the Property is related to Landowner's desire to increase its business profitability, which is not a valid reason to grant a dimensional variance.

The facts of this case, moreover, are distinguishable from those in *Daley*, because the church was not "renting" space in an effort to maximize its profits; rather, the increase in congregants came from the natural expansion of the surrounding neighborhood, which the Church was only seeking to accommodate. Thus, the need for additional parking in *Daley* did not result from a self-inflicted need for more business/profits. In addition, as we believe was correctly reasoned by the ZHB, a denial of the requested variance here

conforms with the reasoning employed by this Court in *Hill District Project Area Committee, Inc. v. Zoning Board of Adjustment of City of Pittsburgh*, 162 Pa. Cmwlth. 323, 638 A.2d 278 (1994). In *Hill District*, similar facts were presented wherein a business sought variances to construct a parking garage two blocks away from its place of business for use primarily by its employees. *Id.* at 279. This Court denied the requested variances because it reasoned, *inter alia*, that the hardship alleged was an impermissible economic hardship relating to that business entity's desire to use the property, despite it being zoned for other permitted and practical uses, in a manner most valuable to it. *Id.* at 281–82. Thus, the hardship related to the landowner, and not the property.

Neighbor also asserts that any hardship was self-created because one of Landowner's partners, Edward Sebastian, was also the managing partner of the neighboring CVS property that was sold to AVS, which now will neither permit parking on their property nor renew the parking license. Neighbor, in particular, points to testimony that the CVS partnership relied on Sebastian's judgment when it decided to sell the CVS property to AVS.

Landowner contends that the partnership did not control or participate in the sale of the neighboring property by CVS to AVS; it did not control the decision by either CVS or AVS to not renew the parking license; and, finally, even with the 28 parking spaces, the Property has a serious parking problem.

The evidence of record establishes that Landowner, through the actions/inactions of one of its partners, contributed to the loss of 28 parking spaces and the parking difficulties at the Property. Before the trial court, Edward Sebastian, who is the managing partner of Landowner and handles the Property's leasing agreements, tenant complaints, and general maintenance, testified as to the sale of the neighboring property with its 28 parking spaces.[7] Sebastian explained that Landowner entered into the parking lot license agreement in 1995, but AVS, the successor in interest to CVS, will not, even now, allow parking.[8] (Trial Ct. Trans. at 71–72.) The parking license will terminate in 2010, and AVS will neither extend the parking license nor sell its property to Landowner. (Trial Ct. Trans. at 72.) Sebastian explained how he was one of three partners in CVS,[9] which owned the neighboring property that was ultimately sold to AVS in 2000. Sebastian testified to being Landowner's managing partner, while also being a partner in CVS, which "didn't do anything without [him]" (Trial Ct. Trans. at 82–84), including deciding to sell the neighboring property to AVS.[10] (Trial Ct. Trans. at 65, 67, 82–83.) Sebastian testified that the impetus for the sale of the neighboring property by CVS to AVS was "my two [CVS] partners had grandchildren in Florida, and their wives wanted to move to Florida, and that was—that was the main reason ... why it was sold."

---

7. Sebastian has been in the Landowner partnership since the Property was planned and constructed in 1994. (Trial Ct. Trans. at 79.)

8. Sebastian explained that, despite its parking license, AVS has posted no-parking and tow-away zone signs on the neighboring property. (Trial Ct. Trans. at 85.)

9. In addition to Sebastian, the other two partners in CVS were Rudy Coran and John Vaccarello. (Trial Ct. Trans. at 66.)

10. When asked whether he was the managing partner of CVS, Sebastian answered "yes," which was allowed into evidence over the objection of Landowner's counsel. (Trial Ct. Trans. at 85.)

(Trial Ct. Trans. at 68, 88.) Thus, as a partner in CVS, Sebastian could have secured for Landowner the 28 parking spaces utilized by Landowner through the parking license by either extending that license prior to the sale to AVS or selling a portion of that neighboring property to Landowner; but, instead, Sebastian approved the sale of the CVS property to AVS without extending the parking license or granting Landowner a parking easement. These actions/inactions on the part of Sebastian, at the very least, contributed to the current parking difficulties for the Property and the claimed hardship by Landowner.

In accordance with the foregoing analysis, we reverse the trial court's decision to grant Landowner a variance from the 35–foot setback requirement to allow for the construction of the multi-story parking garage.[11] The hardship complained of by Landowner is a self-inflicted hardship, which does not warrant the granting of a dimensional variance.

### ORDER

**NOW,** June 2, 2006, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby REVERSED.

---

**11.** Because of our conclusion that the hardship claimed by Landowner was impermissibly self-inflicted, we need not address the remainder of Neighbor's arguments.