IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eleven Waves, LLC,                           :
                        Appellant            :
                                             :
            v.                               :        No. 319 C.D. 2020
                                             :        Argued:  June 7, 2021
Zoning Hearing Board of the Township         :
of Bethlehem, Northampton County,            :
Pennsylvania                                 :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE J. ANDREW CROMPTON, Judge (P.)
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                          FILED:  August 10, 2021


            Eleven Waves, LLC (Applicant) appeals from the Northampton County
Court of Common Pleas' (Trial Court) order affirming the Zoning Hearing Board
of Bethlehem Township's (ZHB) order that denied a variance to allow an apartment
above a detached garage of a single-family home.  Applicant argues that the
apartment was approved in permits issued to prior owners, with construction partially
completed, making it a preexisting nonconforming use.  It contends an accessory
apartment is permitted by right under the Bethlehem Township Zoning Code
(Code)[1] such that the ZHB and the Trial Court erred in applying the standard for a use
variance when it met the standard for a dimensional or *de minimis* variance.
Applicant claims that denying the variance causes unnecessary hardship as it

---

[1] Bethlehem Twp., Pa., Zoning Code, Chapter 275 (Dec. 15, 1997).

purchased the property as an investment, intending to reside in the apartment and rent the home. Because Applicant did not establish an unnecessary hardship, we affirm.

## I. Background

Applicant, which is solely owned by Kathleen Messing (Owner), owns real estate improved by a single-family dwelling and a detached garage at 2073 11th Street, Bethlehem, Pennsylvania, 18020 (Property). The Property is located within a Medium Density Residential Zoning District, which precludes multiple family dwellings on a single lot. However, pursuant to permits issued decades ago, prior owners partially constructed a second-floor apartment in the detached garage. In 2019, Applicant purchased the Property as an investment, intending to complete the apartment so Owner could reside there while renting the single-family home. To that end, Applicant sought a variance from Section 275-46.B(6) of the Code, which permitted an accessory apartment use *within* the home, for the accessory use of a second-floor apartment in the detached garage.

On March 6, 2019, Applicant filed an "Application for appeal to the [ZHB] seeking zoning relief to use the Property for an accessory apartment within an existing single-family dwelling." Reproduced Record (R.R.) at 544a (Land Use Appeal). Shortly thereafter, Owner posted a notice of the zoning hearing scheduled on the matter, which included a letter from herself and her then fiancé, explaining their intention to move into the apartment and rent the home. R.R. at 22a.

The ZHB held a public hearing on March 27, 2019. Owner and her architect testified on behalf of the corporate Applicant, appearing without counsel. Multiple objectors appeared at the hearing opposing the variance, primarily represented by a resident who testified regarding their collective concerns about the adverse effect that granting the variance would have on the neighborhood (Resident).

2

*See* R.R. at 72a-75a (Notes of Testimony (N.T.), 3/27/19, at 27-30). Resident asserted the variance criteria were not met, emphasizing that allowing more than one family to live on the same lot would "set a dangerous precedent" and alter the essential character of the neighborhood. ZHB Dec., 4/24/19, Finding of Fact (F.F.) No. 9. Another objector echoed these concerns and challenged the hearing notice.

Applicant submitted two building permits issued to prior owners authorizing the apartment, a construction permit issued in 1988 (1988 Permit), and a building permit issued April 12, 1960 (1960 Permit) (collectively, Permits). The 1988 Permit stated on its face: "NOTE: If construction is not started within six months, or is discontinued for six months, this permit is VOID." R.R. at 30a; *see* F.F. No. 7. The 1960 Permit authorized construction of the detached garage and provided for construction of "a second[-]floor four room apartment with bath." R.R. at 29a. The 1960 Permit pre-dated enactment of the Code. F.F. No. 6.

Based on the evidence, the ZHB denied the variance. It determined that: "[Applicant] seeks a use variance, rather than a dimensional variance or a *de minimis* variance." ZHB Dec., 4/24/19, at 1-2. Relevant here, it found that "no electrical work was undertaken, no insulation was installed, nor were permanent walls erected. As a result, no apartment was created." F.F. No. 8. It reasoned that were the variance granted, "it would cause an alteration in the essential character of the neighborhood which presently consists primarily of [a] single-family residence situated upon a single lot of record." ZHB Dec. at 6. For that reason, it determined the variance was not minimal. *Id.* The ZHB noted that it previously considered and rejected use of a single lot for multiple residences. *See id.* at 5. In addition, a

3

"majority[2] of the [ZHB] found it noteworthy that despite the issuance of two separate [b]uilding [p]ermits, construction of the apartment did not take place." *Id.* at 6.

The ZHB analyzed the following five factors for a variance under Section 275-11.F(4) of the Code (relating to ZHB functions):

> [1] That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located.
>
> [2] That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.
>
> [3] That such unnecessary hardship [was not] created by [Applicant].
>
> [4] That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.
>
> [5] That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

*Id.*; *see* ZHB Dec. at 5-6. The ZHB found no hardship because the Property was being utilized as a single-family dwelling and could be used in conformity with the Code without a variance. It determined that there were "no unique physical circumstances or conditions" of the Property meriting a variance, and any hardship arose from Applicant's proposal to use the Property in a way not expressly authorized. *Id.* at 6. The ZHB also specifically rejected Applicant's argument that once the Permits were issued, the Township could not rescind the authorization. *Id.*

---

[2] The dissenting member believed the prior permits precluded denial of the proposed use.

In its appeal to the Trial Court, Applicant asserted the ZHB erred as a matter of law and abused its discretion in "failing to conclude that the use of the portion of garage space previously approved for an apartment use is not an existing nonconforming use permitted to continue." R.R. at 545a (Appeal, ¶8(b)). It asserted the ZHB erred "in failing to conclude that [Applicant] met the standard for the grant of a variance to conduct the apartment use." *Id.* (Appeal, ¶8(c)). It also challenged the conclusion that granting the variance would alter the neighborhood's character, claiming that other accessory apartments existed in the same zoning district.

Relying on the record created before the ZHB, the Trial Court issued an order on February 21, 2020, denying Applicant's appeal. *See* R.R. at 596a (Order). Therein, it cited this Court's decision in *Pequea Township v. Zoning Hearing Board of Pequea Township*, 180 A.3d 500 (Pa. Cmwlth. 2018), involving a request for a variance for construction of a second-floor garage apartment. *Id.* (Order at 1, n.1).

Applicant timely appealed the order to this Court, and subsequently filed a statement of errors complained of on appeal. The Trial Court then issued an opinion explaining its deference to the ZHB and its reliance on *Pequea Township*. *See* Trial Ct., Slip Op., 5/19/20, 1-16. After briefing and argument, we consider the matter.

## II. Discussion

On appeal,[3] Applicant assigns legal error to the ZHB and the Trial Court in applying the standards for a use variance instead of a dimensional variance.

---

[3] "On appeal from a decision of a [ZHB], where the trial court does not take additional evidence, its scope of review is limited to determining whether the local zoning agency committed an error of law and whether its necessary findings are supported by substantial evidence." *Pham v. Upper Merion Twp. Zoning Hr'g Bd.*, 113 A.3d 879, 887 n.5 (Pa. Cmwlth. 2015). "Where, as here, no additional evidence is presented to the trial court, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law." *Id.* at n.6.

5

It maintains that an accessory apartment use is permitted as of right in the zoning district under the Code when the use is within a single-family home such that the proposed variance is dimensional and *de minimis*. It contends that the inability to complete the second-floor apartment and resulting alteration of living arrangements constitutes an unnecessary hardship under the dimensional variance standard. Relying predominantly on the 1960 Permit, Applicant emphasizes that the construction of a second-floor apartment over the garage was previously approved and partially constructed, such that it was a preexisting nonconforming use.

The ZHB counters that the proposed apartment use is not permitted in a separate dwelling like the detached garage here. It underscores that Section 275-46.B(6) of the Code only allows accessory apartment use as of right *within* a single-family dwelling. To construe the Code otherwise, it asserts, would allow multi-family dwellings on the same lot, which would effectively redraft the zoning map to authorize a high-density residential zone within a medium density zone.

Initially, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. *See Taliaferro v. Darby Twp. Zoning Hr'g Bd.*, 873 A.2d 807 (Pa. Cmwlth. 2005). As the factfinder, the ZHB's function is to weigh the evidence, and to serve as the sole judge of the credibility of witnesses. *Id.* Further, we must view the evidence in a light most favorable to the prevailing party below, who is given the benefit of all reasonable inferences arising from the evidence. *In re McGlynn*, 974 A.2d 525 (Pa. Cmwlth. 2009).

"The burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011). To obtain a variance, an applicant must establish five factors summarized as follows:

(1) unique physical conditions of the property that impose an unnecessary hardship; (2) because of such unique conditions, the property cannot be developed in strict conformity with the Code so the variance is necessary to enable its reasonable use; (3) the hardship has not been created by the applicant; (4) the variance will not alter the essential character of the neighborhood; and (5) the variance represents the minimum variance that will afford relief. *See* Section 275-11(F)(4) of the Code; *see also Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 46-47 (Pa. 1998). The Code provision mirrors the standard contained in Section 910.2 of the Pennsylvania Municipalities Planning Code (MPC),[4] *as amended*, added by the Act of December 21, 1998, P.L. 1329, 53 P.S. §10910.2.

### A. Variance Criteria (Use or Dimensional)

At the outset, we consider Applicant's contention that its variance request involved a dimensional variance and not a use variance, such that the ZHB and the Trial Court applied the wrong legal standard. Applicant argues that the variance to finish constructing the second-floor garage apartment is a locational dimensional variance because an accessory apartment use is permitted under the Code. *See* Code, §275-46.B(6). Section 275-46 lists the permitted by-right uses in the Medium Density Residential District as including "the following accessory uses . . . (6) Accessory apartment within an existing single-family detached dwelling." *Id.*, R.R. at 230a. The requested apartment use here is not within a single-family dwelling, but rather, in a detached garage such that two separate dwellings will exist if the variance is granted where there is currently one.

In *Hertzberg*, our Supreme Court distinguished between the two types of variances as follows:

---

[4] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

7

When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations. Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.

*Id.* at 47. Stated differently, if the proposed use is permitted under the applicable zoning regulations and the variance pertains to area or space for the use, then the type of variance is dimensional, whereas when the proposed use is not consistent with the uses permitted in the zone, then the use variance standards apply.

Notwithstanding the differences between these types of variances, under both standards, an applicant "must show that unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest." *Id.* (citation omitted). However, the distinction is relevant because a dimensional variance involves a more relaxed standard for proving unnecessary hardship than a use variance.[5] *Demko v. City of Pittsburgh Zoning Bd. of Adjustment*, 155 A.3d 1163, 1168 (Pa. Cmwlth. 2017).

In the instant case, Applicant's intended use as an accessory apartment is a permitted use in the zone, but only when located within the existing dwelling. Because the type of use Applicant requested is a permitted use under the Code, we agree that the type of variance at issue is closer to a dimensional variance and should have been evaluated using the lesser standard for hardship. *See, e.g.*,

---

[5] [I]n the context of use variances, 'unnecessary hardship is established by substantial evidence that: (1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) the property can be conformed for a permitted use only at a prohibitive expense; or (3) the property has no value for any purpose permitted by the zoning ordinance.'

*Marshall v. City of Phila.*, 97 A.3d 323, 329 (Pa. 2014).

8

*Partners v. Zoning Hr'g Bd. of the Mun. of Monroeville* (Pa. Cmwlth., No. 1992 C.D. 2016, filed May 4, 2017), 2017 WL 1737927 (unreported)[6] (explaining type of variance was dimensional because it involved a permitted use).

When evaluating unnecessary hardship for a dimensional variance, courts may consider various factors not germane to a use variance. *See Hertzberg*; *Partners*. These factors include: "the economic detriment to the applicant if the variance was denied[;] the financial hardship created by any work necessary to bring the building into strict compliance with the zoning requirements[;] and the characteristics of the surrounding neighborhood." *Hertzberg*, 721 A.2d at 50. It bears repeating that

> while *Hertzberg* eased the requirements . . . it did not make dimensional requirements . . . "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that [was] the case, dimensional requirements would be meaningless—at best, rules of thumb—and the planning efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time.

*Zappala Grp., Inc. v. Zoning Hr'g Bd., Town of McCandless*, 810 A.2d 708, 711-12 (Pa. Cmwlth. 2002) (citations omitted). Indeed, "even in a dimensional variance case, a variance is not warranted where the hardship is related to the landowner's desired use of the land, rather than the land itself, *Yeager v. Zoning Hearing Board of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001), or the hardship is self-inflicted, *Ken–Med Associates v. Board of Township Supervisors*

---

[6] Though it is not binding, we cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

*of Kennedy Township*, 900 A.2d 460, 466 (Pa. Cmwlth. 2006)." *Ciferno v. Zoning Hr'g Bd. of Twp. of Rostraver* (Pa. Cmwlth., No. 1065 C.D. 2016, filed July 5, 2017), slip op. at 12, 2017 WL 2857056, at *5.

Case law is clear that "[m]ere economic hardship will not of itself justify a grant of a variance." *Wilson v. Plumstead Twp. Zoning Hr'g Bd.*, 936 A.2d 1061, 1069 (Pa. 2007) (citation omitted). Even "evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Marshall v. City of Phila.*, 97 A.3d 323, 330 (Pa. 2014) (citations omitted); *see also Wilson*, 936 A.2d at 1070 ("A variance will not be granted because a zoning ordinance deprives the landowner of the most lucrative and profitable uses.").

Regardless of the type of variance at issue, Applicant did not establish an unnecessary hardship. *Zappala Grp.*, 810 A.2d at 711 (reasoning "whether we consider the request to be for a use or dimensional variance does not matter" because hardship criterion not met under either standard). "A variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'" *Id.* (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972) (emphasis in original)).

Here, the described hardship is financial as to what Applicant expected when it purchased the Property versus what it acquired. Applicant asserts that the "economic detriment is large because [Owner] is intending to use the [a]partment as her primary residence." *See* Applicant's Br. at 25. As described, Applicant's purported hardship is properly characterized as self-imposed as it only exists because of Owner's desire to rent the home and live in the proposed apartment, which was barely a tenth completed, and so not capable of serving as a

residence at the time of purchase. R.R. at 71a; N.T. at 26. To the extent the unnecessary hardship is the cost of connecting the garage to the home, Applicant submitted no estimates indicating the cost of conformity. Also, connecting the home and garage presumably would alter the exterior of the Property, and thus impact the character of the neighborhood. We are also unpersuaded that being left with a framed apartment that cannot be occupied constitutes a hardship attendant to the *property* as opposed to the person, when the Property may be put to reasonable use as a single-family dwelling.[7] Thus, even when applying the reduced standard for a dimensional variance, Applicant did not establish an unnecessary hardship.

Moreover, we discern no error in the ZHB's conclusion that granting the variance would have been inconsistent with the neighborhood in that it would allow two detached dwellings on the same lot. For that same reason, the ZHB determined the requested variance did not represent the minimum modification to afford relief. As to these elements, we defer to the ZHB as the factfinder. *Marshall*, 97 A.3d at 331 ("It is the function of the zoning board to determine whether the evidence satisfies the criteria for granting a variance.").

In sum, Applicant did not establish the variance criteria. As such, there is no need to remand to the Trial Court to remand to the ZHB to analyze the dimensional variance factors when Applicant also did not meet the non-hardship factors common to both types of variances.

## B. *De Minimis* Doctrine

Applicant also asserts that the variance sought is *de minimis*, and therefore, the ZHB erred in failing to assess its request on that basis.

_____

[7] During argument, counsel for Applicant again articulated the hardship as having only a partially finished apartment, implying that the incomplete apartment space that is not usable as a residence constitutes the hardship.

11

A *de minimis* variance may be granted "in very limited situations where the proposed *dimensional* deviations from the zoning requirement [are] relatively minor, and where the insistence in rigid compliance is not absolutely necessary to preserve the public policy to be obtained." *Segal v. Zoning Hr'g Bd. of Buckingham Twp.*, 771 A.2d 90, 94-95 (Pa. Cmwlth. 2001) (emphasis in original) (citation omitted). "The determination of whether or not the *de minimis* doctrine applies requires careful consideration of both of these factors." *Pequea Twp.*, 180 A.3d at 504. Further, "the decision of whether to grant a *de minimis* variance is left to the discretion of the local zoning board." *Segal*, 771 A.2d at 95 (citation omitted). Thus, the ZHB's decision is reviewed under an abuse of discretion standard.

Applicant cites no legal authority for the proposition that the ZHB abused its discretion in not assessing the requested variance under the *de minimis* doctrine when the variance requested seeks to complete 90% of a proposed apartment to meet occupancy standards. Rather, in support, it cites two cases, *Lench v. Zoning Board of Adjustment off City of Pittsburgh*, 13 A.3d 576 (Pa. Cmwlth. 2011), and *Dotterer v. Zoning Hearing Board of Upper Pottsgrove Township*, 588 A.2d 1023 (Pa. Cmwlth. 1991), which are inapposite.

Both cases involved the zoning board's grant of a *de minimis* variance, in the exercise of its discretion to do so, based on the specific circumstances and facts found, and in both cases, this Court upheld the factfinder. In *Lench*, this Court agreed with the zoning board that the variance requested was minor when the height differential was two feet, four inches or four inches. We assessed the deviation, noting it amounted to a less than one percent deviation from the ordinance height restriction. In *Dotterer*, the applicant sought to subdivide two lots, one of which had no access to the road except through the other one, thus

12

permitting a variance from the frontage requirement for each lot. Because there was "no physical change or impact whatsoever" to the property, this Court noted the variance was *de minimis*. *Id.* at 1025.

In analyzing whether the variance requested was *de minimis*, there must be evidence regarding how the change was minimal, such as a percentage in the requested deviation from distance or dimensional constraints. *Nettleton v. Zoning Bd. of Adjustment of City of Pittsburgh*, 828 A.2d 1033 (Pa. 2003). For example, there may be evidence that the impact on the neighborhood is minimal based on evidence showing similar uses in similar locations. *See, e.g.*, *Pequea Twp.* (zoning hearing board considered variance for apartment *de minimis* in part based on other similar minimal variances in the area). However, Applicant does not allude to any evidence demonstrating the requested variance was minor. Also, despite that Applicant claims there are other equivalent apartment uses in the neighborhood, the record is devoid of any evidence in support of that claim.

During oral argument before this Court, Applicant asserted it sought a locational *de minimis* variance because the only element rendering the use noncompliant with existing zoning regulations was that the apartment was in a detached garage as opposed to a connected garage. But connecting the home to the garage would involve a physical impact and thus alter the exterior of the Property.

Further, the ZHB is afforded deference as to its findings that the variance would alter the essential character of the neighborhood. The record contains testimony of objectors who raised concerns about property values and the futility of setbacks when two dwellings may be located on a single lot, but the accessory use dwelling is not subject to setback requirements. In addition, the ZHB concluded that by adding another free-standing dwelling on a single lot in a medium

density district, granting the variance was tantamount to re-writing the Code and altering the zone mapping to fit a high-density residential zone within a medium density district. Thus, we discern no abuse of discretion by the ZHB in declining to apply the *de minimis* doctrine to the requested variance.

### C. Nonconforming Use & Permits

We also discern no merit in Applicant's argument that the partially constructed apartment constitutes a preexisting nonconforming use.

A lawful, nonconforming use of a property is a use predating a subsequent prohibitory zoning restriction. *See Hafner v. Zoning Hr'g Bd. of Allen Twp.*, 974 A.2d 1204 (Pa. Cmwlth. 2009). The right to maintain a nonconforming use is only available for uses that were lawful when they came into existence and that existed when the ordinance took effect. *Id.* Addressing whether a use qualifies as a continuation of an existing, nonconforming use, our Supreme Court held that the proposed use need not be identical to the current use, but must be sufficiently similar to the nonconforming use as not to constitute a new or different use. *Limley v. Zoning Hr'g Bd. of Port Vue Borough*, 625 A.2d 54 (Pa. 1993); *see Domeisen v. Zoning Hr'g Bd., O'Hara Twp.*, 814 A.2d 851, 856 (Pa. Cmwlth. 2003). Critically, it is the burden of the party asserting "the existence of a [nonconforming] use to establish both its existence and legality before the enactment of the ordinance at issue." *Lamar Advantage GP Co. v. Zoning Hr'g Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 438 (Pa. Cmwlth. 2010).

To meet this burden, the party must present "objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Id.* (citation omitted). Relevant here, "[t]he manner of use

14

and the dates of its existence are questions of fact on which a reviewing court defers to the fact-finder . . . ." *Id.*

Applicant acknowledges that the 1988 Permit offers dubious authority for the use as an apartment based on lack of substantial construction within the relevant time periods. *See* Applicant's Br. at 32. As such, its nonconforming use argument hinges on the 1960 Permit, which predates the Code and provided for the detached garage and second-floor apartment.

The ZHB explained the Code accounts for such situations (when the work contemplated by a permit is not completed) in Section 275-11(J). That section provides that where an applicant fails to diligently commence substantial construction within the applicable 6- or 12-month period, "it shall be conclusively presumed that [Applicant] has waived, withdrawn or abandoned [its] appeal or [its] application, and all provisions, variances, and permits granted to [it] by the [ZHB] shall be deemed automatically rescinded." ZHB Dec. at 7. As such, by operation of the Code, the 1960 Permit would have been rescinded when construction lapsed for more than a year.

Critically, Applicant bore the burden of proving the existence of the apartment use pursuant to the 1960 Permit and its continuation thereafter. Here, Applicant did not demonstrate substantial construction of an apartment under the 1960 Permit or submit evidence depicting the use was preexisting when the Code was enacted. Instead of citing evidence of the existence and continuation of the apartment use, Applicant asserts that substantial construction was commenced pursuant to the 1960 Permit because the detached garage with a second floor was constructed.

15

In determining that an apartment was not established, the ZHB did not err. Based on the evidence, the ZHB found that no apartment exists. F.F. No. 8. Indeed, the record reveals that there was no electricity, no insulation, and barely more than a framing of the walls for the apartment. *Id.* During the hearing, after the ZHB viewed the photographs depicting the exterior and interior of the garage, Applicant's architect agreed that it was "not an apartment" and was "not even a tenth of the way finished." R.R. at 71a; N.T. at 26. We must defer to the ZHB's findings that no nonconforming use existed. *Lamar Advantage*. As such, Applicant did not prove a lawful preexisting nonconforming use as an apartment.[8]

## D. *Pequea Township*

Lastly, we consider Applicant's argument that the Trial Court erred in relying on *Pequea Township* because the case is factually distinguishable. Like the current appeal, that case involved an apartment over a garage; however, there the zoning hearing board and the trial court agreed the use was permitted based on the *de minimis* doctrine. This Court reversed in part, concluding that a variance to construct a second-floor addition to the garage was not needed to make a reasonable use of the property as a residence with a garage. *Id.* Therefore, the

---

[8] Here, neither Applicant nor Owner is the permit holder, so neither lost a right previously held. Though Applicant implicates the doctrine of vested rights in the anticipated use as an apartment, it did not brief this argument so it is not properly before us. Regardless, Applicant was not the permit holder and did not exemplify the following factors weighed in vested rights analysis: (1) due diligence in attempting to comply with the law; (2) good faith throughout the proceedings; (3) the expenditure of substantial unrecoverable funds; (4) the expiration without appeal of the period during which an appeal could have been taken from the issuance of the permit; and (5) the insufficiency of the evidence to prove that individual property rights or the public health, safety or welfare would be adversely affected by the use of the permit. *Petrosky v. Zoning Hr'g Bd., Upper Chichester Twp., Del. Cnty.,* 402 A.2d 1385, 1388 (Pa. 1979). From the facts here, Applicant did not acquire a vested right in the 1960 Permit. Applicant points to minimal expenditure of funds, which involved hiring an architect and updating the single-family home, which funds may be recovered in rental income or sale.

applicant in *Pequea* did not meet his burden of proving the need for a variance. The Trial Court did not err in applying the same rationale here[9] and concluding that Applicant did not establish a hardship related to the Property.

### III. Conclusion

Because Applicant did not establish an unnecessary hardship, we affirm the Trial Court's order upholding the ZHB's decision denying the variance.

_____
J. ANDREW CROMPTON, Judge

---

[9] We note that Applicant cites *Pequea Township* in its favor despite challenging its applicability. *See* Applicant's Br. at 34-35. Contrary to Applicant's suggestion, this Court does not infer from *Pequea Township* that a hardship can be created by relying on a permit issued by a municipality. There, this Court concluded that good faith reliance on a zoning officer's advice did *not* constitute unnecessary hardship; our reason did not imply that reliance on a permit may be a hardship, particularly when the authority of the permit is suspect under the circumstances.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eleven Waves, LLC,  :
                 Appellant  :
                  :
        v.  :  No. 319 C.D. 2020
                  :  Argued: June 7, 2021
Zoning Hearing Board of the Township  :
of Bethlehem, Northampton County,  :
Pennsylvania  :

# **O R D E R**

     **AND NOW**, this 10th day of August 2021, the order of the Northampton County Court of Common Pleas is AFFIRMED.


_____

J. ANDREW CROMPTON, Judge