# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John A. Ciferno and Sharon R. :
Ciferno, Husband and Wife, :
     Appellants :
      :
    v. : No. 1065 C.D. 2016
      : Argued:  April 6, 2017
The Zoning Hearing Board of the :
Township of Rostraver :


BEFORE: **HONORABLE RENÉE COHN JUBELIRER,** Judge
    **HONORABLE PATRICIA A. McCULLOUGH,** Judge
    **HONORABLE ANNE E. COVEY,** Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**    **FILED:  July 5, 2017**


John A. Ciferno and Sharon R. Ciferno, Husband and Wife (Landowners), appeal from the Order of the Court of Common Pleas of Westmoreland County (common pleas), which affirmed the Decision of the Zoning Hearing Board of the Township of Rostraver (Board).  The Board found Landowners' evidence did not adequately certify the stability of a newly-altered slope on Landowners' property (Property) or support Landowners' request for variances from the provisions of the Zoning Ordinance of Rostraver Township (Ordinance) related to slopes.  In their appeal to this Court, Landowners argue the Board:  (1) imposed slope stability requirements that were unreasonable and not contained within the Ordinance; (2)

capriciously disregarded their expert's testimony certifying the stability of the slope; and (3) improperly denied their request for a variance from the Ordinance's requirement that they construct a chain link fence along the top of the slope. Discerning no error or abuse of discretion, we affirm.

## I.     Background

In the fall of 2014, Landowners purchased the Property, which is zoned B-2 Retail Business.  The Property has a gravel-covered access road from Mt. Pleasant Road running downslope to a building pad that contains a storage building.  The Property was wooded on the northern and southern sides, but Landowners removed the trees and brush from the Property.  Landowners then "cut the toe of the slope and placed fill from the top of the slope adjacent to Mt. Pleasant Road, downward to the elevation of the building pad" to reduce the slope's angle "near its top, to create a uniform line of the slope from top to bottom, and to clean up the Property."  (ZHB Decision, Findings of Fact (FOF) ¶ 3.)  Landowners installed a guard rail along the top of the slope.  Landowners were unaware that their actions were governed by the Ordinance.  The Ordinance addresses, in relevant part, the grading of earth in excess of 5,000 feet and requires that:  "[a]ll cut/fill slopes be benched"[1] as set forth in the Ordinance; a cut or fill slope "shall not exceed a slope of 3[H]:1[V]" and, if it must do so, requires the property owner to obtain and file a soils report "prepared by a registered professional engineer certifying the slope's stability"; and if a cut or fill slope exceeds 3H:1V and is higher than six feet, a minimum of a four-foot chain link fence must be erected along the entire length of

---

[1] A "bench" is defined as "an area of level or gently sloping land with steep slopes above or below."  Webster's Third New International Dictionary 202 (2002).  "Benching . . . affects [the] stability" of a slope.  (FOF ¶ 14(a).)

the top of the slope.  (Ordinance § 195-70(D).)  That winter the Township of Rostraver's (Township) Zoning Enforcement Officer issued Landowners a Notice of Violation related to their re-grading of the Property.

Landowners filed their variance request acknowledging that they had created a slope that exceeded the Ordinance's grading requirements, but requesting variances because it was not feasible to have the 3H:1V slope required by the Ordinance.  After a hearing, at which Landowners appeared pro se, they received a continuance to obtain a soils report from a qualified engineer to address the slope's stability.  Landowners retained Pennsylvania Soil and Rock Incorporated (Pa. Soil and Rock) to complete a geo-technical investigation and evaluation of the re-graded slope.

At a second hearing, Landowners presented photographic evidence, Mr. Ciferno's testimony, and the testimony of Kevin Brissette, a soils engineer with Pa. Soil and Rock, who was accepted as an expert in civil engineering.  Mr. Brissette testified the generally-accepted safety factor for end of construction slopes is 1.3, although 1.5 has also been used, and the slope here was slightly above 1.3.  Thus, he indicated the slope was stable in its current condition.  Neighboring landowners presented their own testimony in opposition and questioned Landowners' witnesses.  That testimony included that Landowners had removed all of the trees from the Property, which remained bare for several months, and that there was a significant amount of rainwater that flowed from the Property onto a neighbor's yard. (R.R. at 115-16, 120.)

At the Township's solicitor's request, Landowners subsequently submitted a written soils report dated July 22, 2015, and signed by Mark Brashear, P.E., Project Engineer, also with Pa. Soil and Rock (Report).  The Report included professional

3

opinions regarding the stability of the slope, potential improvements to the slope, drawings, maps, boring logs, and laboratory test data. The Report contained much of the same information as Mr. Brissette's testimony, but also stated that "[t]he results of the stability analysis indicate that short term, the slope is stable and slope failure is not imminent." (R.R. at 6.) The Report also contained suggestions on improving the slope's long-term stability, including monitoring the slope and modifying the slope (one of which added benching to the slope), but noted that modification was made more difficult and expensive by the fact that the slope was already constructed. (R.R. at 6-7.)

## II.    Board's Decision

Based on the Report and Mr. Brissette's testimony, the Board found the slope's overall grade is between 2H:1V and 3H:1V, the slope's safety factor is slightly above 1.3, a safety factor of 1.3 is a generally-accepted end of construction factor of safety, but that higher safety factors such as 1.5 are also used. The Board observed, citing the Report, that to maintain a safety factor of 1.5 on a 2H:1V fill slope, all of the factors that affect stability should be considered, including "slope geometry, benching, removal of organics, drainage, and the nature and compaction of fill material." (FOF ¶ 10(d).) The Board recognized that, despite the Report's recommendations, Landowners did not believe there was any need to improve the slope's stability and took the position that the slope is stable as is, the Ordinance's benching requirement is superfluous, and the guard rail installed is an adequate substitute for the required four-foot chain link fence along the top of the slope. (*Id.* ¶ 13.)

4

The Board found the Report was more complete and detailed than Mr. Brissette's testimony. The Board concluded that, in "the short term, [Landowners'] slope is stable and slope failure is not imminent," but observed that when it viewed the slope, "a tension crack was evident at the top of the cut slope in part of the slope area of concern." (*Id.* ¶ 10(e), (f).) The Board explained that, although a 1.3 safety factor is generally accepted, that safety factor does not "adequately compensate[] for the slope's 2H:1V slope, its lack of benching and presence of fill near the top of the slope," and provided five additional reasons why that safety factor was not adequate. (*Id.* ¶ 14.) These reasons included: Landowners' removal of all of the organics on the slope; the observable tension crack at the top of the cut slope that had already occurred within six months of the re-grading; and the Report's qualification of the engineering opinions that the slope is stable by stating "the results of the stability analysis indicate that **short term**, the slope is stable and slope failure is not imminent." (*Id.* ¶ 14 (emphasis in original) (quotation omitted).) The Board held that a "certification of 'short term slope stability' is not an unequivocal, unconditioned opinion certifying to the slope's stability." (FOF ¶ 14(e).) Thus, it concluded Landowners' certification was insufficient under the Ordinance.

In addition, the Board addressed Landowners' variance requests and determined that any hardship Landowners would experience in fixing the grade now and adding benching was not due to the Property's physical circumstances or the denial of the variance but because they undertook the original grading project without considering the Ordinance's requirements.[2] The Board further found the

[2] Section 195-97(C)(5) of the Ordinance addresses variances and requires that, before the Board grants a variance, it must find: (a) "the property has unique physical circumstances and that an unnecessary hardship is due to those circumstances"; (b) because of those circumstances, **(Footnote continued on next page…)**

5

now-existing slope and installed guard rail do not represent the minimum variance necessary to afford relief in light of the engineering proposals submitted and do not comport with the surrounding residential characteristics of the area. Accordingly, the Board concluded Landowners had not met their burden of proof for a variance. Landowners appealed to common pleas, which affirmed without taking additional evidence. Landowners now petition this Court for review.[3]

## III.    Appeal to this Court

### A.    *Did the Board impose slope stability requirements that were unreasonable and not contained within the Ordinance?*

Landowners first assert the Ordinance does not provide a particular "factor of safety" for slope stability or a particular "degree of stability" that a slope in excess of 3H:1V must meet. Rather, it permits the submission of a soils report, boring logs, and the certification of the slope's stability by a registered engineer to

---

(continued…)

"there is no possibility that the property can be developed in strict conformity with the . . . Ordinance, and that a variance is necessary to enable the reasonable use of the property"; (c) "the unnecessary hardship has not been created by the [a]pplicants"; (d) "the variance, if authorized, will not alter the essential character of the neighborhood"; and (e) "the variance will represent the minimum variance that will afford relief." (Ordinance § 195-97(C)(5).) These requirements track those set forth in Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

[3] When common pleas takes no additional evidence, an appellate court's review is limited to determining whether the zoning board committed an error of law or an abuse of discretion in rendering its decision. *Zoning Hearing Bd. of Sadsbury Twp. v. Bd. of Supervisors of Sadsbury Twp.*, 804 A.2d 1274, 1278 (Pa. Cmwlth. 2002). "An abuse of discretion will only be found where the zoning board's findings are not supported by substantial evidence." *Larsen v. Zoning Bd. of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Assoc. v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

6

establish stability, which Landowners' evidence satisfied. Noting the Ordinance should be strictly construed, *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 228 A.2d 169, 173-74 (Pa. 1967), and the Board is required to apply the Ordinance's terms as written, *Greth Development Group, Inc. v. Zoning Hearing Board of Lower Heidelberg Township*, 918 A.2d 181, 187 (Pa. Cmwlth. 2007), Landowners argue the Board imposed a **more** restrictive requirement than set forth in the Ordinance in requiring stability standards greater than 1.3 and not accepting Mr. Brissette's certification that the slope is stable.

The Board responds it did not impose a particular factor of safety requirement here, but applied the criteria set forth in Section 195-70(D)(3)(a) of the Ordinance. The Board reviewed all of the evidence, which included the Report and Mr. Brissette's testimony, identified the differences between the two and, in its role as fact finder, gave more weight to the Report's statements regarding items that affect the stability of a 2H:1V slope, many of which were lacking here (benching, presence of organics on the slope, etc.), and that the stability was described as "short term." The Board concluded, based on the evidence, that notwithstanding the fact that the slope met the safety factor of 1.3 at this time, the certification applied only in the short term and did not meet the Ordinance's requirement.

The Ordinance requires that if a slope in excess of 3H:1V and greater than six feet tall is necessary, a property owner must either "prepare and file a soils report, with all boring logs prepared by a registered professional engineer certifying to the slope's stability" or install a "retaining structure with a minimum of a four-foot chain link fence [that is] designed and certified by a registered professional engineer." (Ordinance § 195-70(D)(3)(a).) Landowners are correct

7

that the Ordinance does not provide a particular level of stability that a professional engineer must certify a slope as meeting to satisfy the first requirement. However, the Board interpreted the Ordinance's language and concluded a certification of stability that references the slope being stable in the "short term" is not an "unequivocal, unconditioned opinion certifying to the slope's stability" and is inadequate to meet the Ordinance's requirements. (FOF ¶ 14(e).) A zoning board's interpretation of its own ordinance is to be given great weight and deference and a reasonable interpretation should not be reversed. *Broussard v. Zoning Bd. of Adjustment of City of Pittsburgh*, 907 A.2d 494, 500, 502 (Pa. 2006). One purpose of zoning regulations is to preserve the safety and public welfare of the citizenry. *Exton Quarries, Inc.,* 228 A.2d at 178. Here, the Board reviewed the evidence regarding the stability of the slope, some of which conflicted as to the extent of that stability, and reasonably concluded the Ordinance required a more definitive, long-term certification of stability. This reasonable interpretation is consistent with maintaining the safety and public welfare purposes of zoning and, therefore, is entitled to deference.

B. *Did the Board capriciously disregard Landowners' evidence regarding the slope's stability?*

Landowners next argue the Board capriciously disregarded the unrebutted testimony of Mr. Brissette certifying the slope as stable, which, along with the Report, satisfied the Ordinance's requirements for this slope. Mr. Brissette's opinion, which was not found to lack credibility, was the final opinion regarding the slope's stability and statements within the Report did not, as the Board found, "qualify" that opinion. Moreover, Landowners assert Mr. Brissette was not given the opportunity to explain the use of "short term" in the Report because the Report

8

was submitted after Mr. Brissette testified. Landowners contend the Board, based on the Report's "recommendations" for improving stability beyond the safety factor of 1.3, substituted its judgment on the issues of slope stability and the need for benching despite there being no evidence contradicting Mr. Brissette's expert testimony, which it cannot do pursuant to *Silva v. Zoning Hearing Board of Lower Gwynedd Township* (Pa. Cmwlth., No. 332 C.D. 2008, filed January 28, 2009) (holding that a zoning board's rejection of the findings of civil engineers without contrary evidence is a capricious disregard of evidence), slip op. at 10-11.[4]

The Board argues there was no "capricious disregard" because its findings were based on its resolution of issues of credibility and conflicting evidence citing *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). It did not reject Mr. Brissette's testimony in the absence of other evidence, but compared that testimony to the Report, weighed the evidence, and found the Report more convincing on certain factors than Mr. Brissette's testimony.

It is well-settled that the Board is the fact finder and is the sole judge of credibility and evidentiary weight. *Taliaferro*, 873 A.2d at 811. We are not to "substitute [our] interpretation of the evidence for that of the zoning hearing board." *Id.* If "the record contains substantial evidence, we are bound by the [B]oard's findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence." *Id.* It is not abuse of discretion for a zoning board to accept one expert's opinion over another expert's opinion. *Id.*

---

[4] Pursuant to this Court's internal operating procedures, an unreported opinion issued after January 15, 2008, may be cited as persuasive authority, but not as binding precedent. 210 Pa. Code § 69.414(a).

Landowners argue Mr. Brissette's unconditioned opinion that the slope, in its current condition, is "stable" was the **only** opinion upon which the Board could rely because it was the last opinion rendered. The Report, signed by Mr. Brashear, the project manager for the slope's stability analysis, contains a caveat. It concludes that the stability analysis indicated that "**short term**, the slope is stable and slope failure is not imminent" and provided recommendations to improve the slope's long-term stability. (R.R. at 6-7 (emphasis added).) Although Landowners assert Mr. Brissette did not have the opportunity to explain what "short term" meant, this was because Landowners did not submit the Report, which they had and is required by the Ordinance, until after Mr. Brissette testified. (*Id.* at 51, 54-56.) The Report was issued on July 22, 2015, and Mr. Brissette testified on August 12, 2015 – a difference of three weeks. Mr. Brissette's testimony did not supersede the Report merely because he testified later in time than the Report is dated, and the interpretation of the weight of this evidence was for the Board to resolve. The Report and Mr. Brissette's testimony were not identical, as suggested by Landowners, but contained differences regarding the slope's ongoing "stability." The Board found "the information within the [R]eport . . . more detailed and complete than the testimony of [Mr.] Brissette." (ZHB Decision, Conclusions of Law ¶ 7.) The Board found the evidence to show the slope was stable only in the short term and in doing so, resolved issues of conflicting evidence. As such, it did not capriciously disregard Mr. Brissette's testimony.

C.    *Did the Board err in denying Landowners' variance request?*

Finally, Landowners argue the Board erred in not granting them a variance from the Ordinance's requirement that they install a four-foot tall chain link fence

10

at the top of the slope and should have allowed them to keep the existing guard rail. They contend the rationale proffered for requiring a chain link fence rather than a guard rail, "[b]ecause if a person would be on top of that slope and fall, the guard rail – I mean, it would stop a car, maybe. But a kid could climb over it and there could be an incident. That's the reason they have the fence," (R.R. at 49), is unreasonable and arbitrary given the rural area in which the Property is located. Landowners contend that, because zoning regulations must be reasonable, non-arbitrary, and substantially related to the interest expressed by the municipality, *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Board*, 820 A.2d 143, 155 (Pa. 2002), the Board's denial of this variance should be reversed.

The Board argues it applied the plain language of the Ordinance in requiring the chain link fence, rather than approving the existing guard rail, and Landowners did not meet their burden of proof for a variance. It asserts substantial evidence supports its findings that the area surrounding the Property has a significant residential element, there is no unnecessary hardship here, any hardship is self-inflicted due to Landowners' actions on the Property before seeking approval under the Ordinance, and the requested variances are not the minimum variances necessary.

The requirement that there be a four-foot tall chain link fence along the top of any slope that exceeds six feet in height is one of the requirements in the Ordinance for constructing such a slope. (Ordinance § 195-70(D).) Landowners sought variances from all three requirements, but only specifically challenge the denial of the variance for the guard rail in their brief to this Court. A variance may be granted if the landowner establishes the necessary elements as set forth in the relevant zoning ordinance and Section 910.2 of the Pennsylvania Municipalities

11

Planning Code, including that there is an unnecessary hardship resulting from the physical characteristics or circumstance of the property itself, that any hardship was not created by the landowner, and that the requested variance would be the minimum relief necessary. (Ordinance § 195-97(C)(5)); 53 P.S. § 10910.2(a). A variance from a zoning ordinance's slope requirements falls within a gray area, but has been treated as a dimensional variance. *See Zappala Group, Inc. v. Zoning Hearing Bd. of Town of McCandless*, 810 A.2d 708, 711 (Pa. Cmwlth. 2002). To prove unnecessary hardship in a dimensional variance case, the court may consider factors "including the economic detriment to the applicant if the variance was denied, the financial hardship created by any work necessary to bring the [property] into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood."[5] *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 50 (Pa. 1998). However, even in a dimensional variance case, a variance is not warranted where the hardship is related to the landowner's desired use of the land, rather than the land itself, *Yeager v. Zoning Hearing Board of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001), or the hardship is self-inflicted, *Ken-Med Associates v. Board of Township Supervisors of Kennedy Township*, 900 A.2d 460, 466 (Pa. Cmwlth. 2006).

Here, Landowners installed the guard rail without considering the requirements of the Ordinance and, in doing so, created their own hardship. They cannot rely on their ignorance of that requirement to claim an unnecessary hardship. *Wilson v. Plumstead Twp. Zoning Hearing Bd.,* 894 A.2d 845, 852-53

---

[5] The standard for unnecessary hardship in use variance cases is more stringent; thus, if Landowners do not meet the standard for a dimensional variance, they likewise would not meet it for a use variance. *See Zappala Group, Inc.*, 810 A.2d at 711.

(Pa. Cmwlth. 2006) (citing *Appletree Land. Dev. v. Zoning Hearing Bd. of York Twp.*, 834 A.2d 1214, 1218 (Pa. Cmwlth. 2003)). To hold otherwise would be counter to our "'strong policy against assisting landowners who violate a zoning ordinance, whether negligently or intentionally.'" *Id.* at 853 (quoting *Apple Tree Land Dev.*, 834 A.2d at 1218). That Landowners expended $8,000 on installing the guard rail and would have to expend some unspecified amount to comply with the Ordinance does not alter the fact that Landowners created their own hardship. Moreover, although Landowners assert the guard rail makes more sense than the required chain link fence, the Board found that the area had a significant residential component, which is supported by the testimony of the surrounding property owners. Given the asserted purpose of the chain link fence requirement, Landowners' self-imposed hardship, and lack of evidence of the financial detriment that would be incurred to make the alteration, it was not error for the Board to apply the plain language of the Ordinance and deny the variance.[6]

---

[6] The Board also asserts Landowners are not entitled to variances from the benching and slope requirements set forth in Sections 195-70(D)(2) and 195-70(D)(3). It is unclear from Landowners' arguments whether they are challenging the denial of these variances other than by arguing the Board erred and/or abused its discretion in not accepting Mr. Brissette's testimony that benching would not make a difference and that requiring the slope to meet the 3H:1V standard would result in the slope being constructed up to the edge of the building. To the extent Landowners' arguments throughout their brief could be considered a challenge to the denial of the variances from these other provisions, they would not meet the requirements for a dimensional variance because: Landowners' hardship is self-inflicted; Landowners did not present any evidence regarding the financial detriment/expense associated with complying with the Ordinance's requirements thereby not proving unnecessary hardship on that basis; and the benching variance requested is not the minimum variance required because following the Report's recommendation to add benching to the slope would result in compliance with the Ordinance.

## IV. Conclusion

The Board reasonably interpreted Section 195-70(D) of the Ordinance as requiring a long-term certification of stability for a slope exceeding 3H:1V, and its findings regarding the short-term nature of Mr. Brissette's certification are supported by substantial evidence and are not a capricious disregard of evidence. Additionally, Landowners did not meet their burden of proving an entitlement to the variance requested. Accordingly, common pleas' Order is affirmed.

_____

**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John A. Ciferno and Sharon R.          :
Ciferno, Husband and Wife,             :
                     Appellants    :
                               :
                 v.           :    No. 1065 C.D. 2016
                               :
The Zoning Hearing Board of the        :
Township of Rostraver                  :

## O R D E R

**NOW**, July 5, 2017, the Order of the Court of Common Pleas of Westmoreland County, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

                                             _____

                                       **RENÉE COHN JUBELIRER,** Judge