IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prime Development Group, LP,      :
                     Appellant    :
                                  :
         v.                       :    No.  1281 C.D. 2020
                                  :    Argued:  November 15, 2021
Upper Makefield Township          :
Zoning Hearing Board              :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                      FILED:  December 23, 2021


         Prime Development Group, LP (Developer) appeals from an order of the Bucks County Court of Common Pleas (Trial Court) that affirmed the decision of the Upper Makefield Township (Township) Zoning Hearing Board (ZHB) denying Developer's application for several variances and special exceptions for construction of a single-family dwelling on a nonconforming triangular-shaped property located in a conservation management (CM) district (Property).  Upon review, we affirm.

## I. Background

         Developer is equitable owner of the Property.  On August 30, 2019, Developer submitted an application (Application) to the Township requesting several variances to construct a single-family dwelling on the Property, which is surrounded by River Road, Hall Road, and Stoneybrook Road in the Township.  The

Property is triangular and nonconforming and has been so configured since 1983 as a result of the rerouting of River Road. The Property configuration predates enactment of the Newtown Area Joint Municipal Zoning Ordinance (Ordinance).[1] Developer sought a special exception pursuant to Sections 1208.C2 and 1507.E of the Ordinance (§§1208.C2, 1507.E) to construct a single-family dwelling on the Property, which is a permitted use in the CM district. The Application proposed a 2,500 square-foot home with a 1,514 square-foot footprint on a half-acre lot.

In January 2020, a public hearing was held, continued to February 2020, to seek the following variances for the Property:

1. Ordinance §401.B - Minimum Lot Area where 43,560 [square feet are] required and 24,225.33 exists;

2. Ordinance §401.0 - Minimum Lot Width at Building Set Back Line where 200 feet is required, and **131.15** feet exists;

3. Ordinance §401.D.1 - Minimum Front Yard where 50 feet is required, and **33.79** feet is proposed;

4. Ordinance §401.D.1 to permit Minimum Building Envelope of **3,839.60** square feet when 20,000 square feet is required;

5. Ordinance §903.B.1 to permit the proposed disturbance in the type AlA soils to allow a **40.47**% area of protection where a 100% is required (this soil type encompasses the entire lot);

6. Ordinance §903.B.4.a to permit steep slopes at 15-25% to be protected at **57.14**% when 75% is required;

7. Ordinance §903.B.5.a to permit a woodland protection area of **17.35**%, where a minimum of 85% is otherwise required;

---

[1] Joint Municipal Zoning Ordinance for Newtown Township, Upper Makefield Township, and Wrightstown Township, 2006, readopted June 23, 2007. *See* Ordinance, §101.

8. Ordinance §903.B.6.c to permit the removal of **22 trees** of a girth of 10 inches or greater, [4] feet above grade [where removal of **any** trees of that size is not permitted];

9. Ordinance §1000.C.2.a to permit the construction of a structure for a permitted use on a lot that is less than 80% of the minimum lot area in the CM District, and;

10. Ordinance §1000.C.2.c to permit the construction of a structure with [] aggregate front and rear yards of less than 60% to the normal requirements of the district in which the Property is located.

Reproduced Record (R.R.) at 363a-64a[2] (emphasis added). During the hearing, Developer presented the testimony of its principal (Principal) who has over 20 years of home-building experience. Principal testified that the size of the home, a two-story, 2,500 square-foot residence, was reasonable for the half-acre lot. Developer also presented expert testimony of its engineer (Engineer) regarding the location of the proposed home on the Property, given the restrictions in the Ordinance.[3] He explained that given the triangular shape of the Property, it abuts three roads, and thus has three front yards, necessitating relief from the setback requirements.

Engineer testified that the proposed plan retains less than half of the soils, when 100% of floodplain soils must be protected. The plan also protects just over 17% of the woodlands when 85% of woodlands are required to be protected in a CM district where the Property is located. He opined that the proposed location of the home, using Stoneybrook Road as its frontage, would allow the most optimal setbacks from the three roads. He also noted that his firm conducted a tree study to ensure that the proposed location would have the least impact on the trees. He

[2] The reproduced record is not in compliance with the Pa. R.A.P. 2173, which directs pages to be numbered using Arabic numerals followed by lower case "a." This opinion uses the correct citation format when referencing the reproduced record.

[3] Counsel explained during oral argument that, given the lot characteristics, the setbacks could not be increased without additional tree removal.

explained that multiple variances are required because construction is only permitted on a lot that is at least 80% of the required lot size (43,560 square feet), whereas the Property is only 55.60% of the required minimum lot size.

A number of residents noted their opposition to the Application during the hearing. *See* ZHB Dec., 4/1/20, Finding of Fact (F.F.) No. 20; R.R. at 390a-91a. The ZHB also received a number of letters or emails in opposition to the Application. F.F. No. 21; R.R. at 391a.

The ZHB denied the Application. Although it found that the Property size and shape presented a hardship that was not caused by Developer, the ZHB determined that Developer did not establish that the variances requested were the minimum necessary to make reasonable use of the Property. Significantly, the ZHB found that "[Engineer] did not testify that the proposed residence was the smallest which could be built on the Property; instead indicating that the proposed residence was of a size and style that [Developer] believed to be marketable." F.F. No. 17. Indeed, Engineer acknowledged that he did not consider a smaller residence, which would reduce the scope of the necessary variances. *See* F.F. No. 19. The ZHB also denied special exception relief because the proposed plan "will result in over-crowding and over-development of the Property" and be detrimental to the character of the neighborhood. *See* ZHB Dec. at 14, Conclusion of Law (C.L.) Nos. 9, 11(a); R.R. at 394a-95a. Developer appealed to the Trial Court.

Without taking additional evidence, the Trial Court affirmed the ZHB's decision. It concluded that Developer did not establish that the variances requested were the minimum necessary to make reasonable use of the Property, emphasizing that to satisfy the variance criteria, the requested variance must represent the least modification to the Ordinance. *See* Trial Ct., slip op., 10/30/20, at 7 (unpaginated).

4

Developer filed a timely notice of appeal of the Trial Court's order to this Court.[4] After briefing and argument, the matter is ready for disposition.

## II. Issues

Developer presents two issues for this Court's review: (1) whether the Trial Court erred as a matter of law in "failing to clearly demonstrate that the proposed relief was not the minimum possible to afford relief," *i.e.*, reasonable use of the Property for construction of a single-family dwelling, (Developer's Br. at 3); and (2) whether the Trial Court erred in determining that overcrowding was a ground for denying relief.

## III. Discussion

On appeal,[5] Developer assigns legal error to the ZHB and the Trial Court in denying the variances because the Property cannot be used as a residential single-family dwelling, keeping with the character of the neighborhood, unless it is

---

[4] The docket reflects the notice of appeal was filed one day late, on December 8, 2020. Pennsylvania Rule of Appellate Procedure 903 requires the filing of an appeal within 30 days of the order, which was November 5, 2020, making the appeal deadline December 5, 2020. *See* Pa. R.A.P. 903(a). Accordingly, this Court directed the parties to address timeliness in their briefs. Developer's brief includes copies of submissions to the Trial Court, including the notice the Trial Court provided indicating the technical nonconformity of the notice of appeal by lacking a certain certificate. *See* Developer's Br. at 30-32. The Trial Court prothonotary erred by not docketing the notice of appeal at the time it was filed under Pa. R.A.P. 902, despite its technical deficiency under a local rule. Here, there is no dispute that Developer took appropriate steps to perfect the appeal. Indeed, it is evident that the notice of appeal was timely filed because the Trial Court issued its order directing the filing of a Rule 1925(b) Statement on December 2, 2020, days before the appeal deadline. *See* R.R. at 90a. As the notice of appeal was filed within the 30-day timeframe, Developer preserved its right to appeal despite the omission of a certificate the lower court required. As such, we have proper jurisdiction over the appeal.

[5] "On appeal from a decision of a [ZHB], where the [T]rial [C]ourt does not take additional evidence, its scope of review is limited to determining whether the local zoning agency committed an error of law and whether its necessary findings are supported by substantial evidence . . . . Where, as here, no additional evidence is presented to the [T]rial [C]ourt, our scope of review is limited to determining whether the ZHB committed an abuse of discretion or an error of law." *Pham v. Upper Merion Twp. Zoning Hearing Bd.*, 113 A.3d 879, 887 nn.5-6 (Pa. Cmwlth. 2015).

constructed of a certain size. Developer also asserts the Trial Court disregarded relevant evidence of record in that it did not give appropriate weight to the expert testimony of Engineer, which was unrefuted.

Initially, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. *See Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa. Cmwlth. 2005). As the factfinder, the ZHB's function is to weigh the evidence, and to serve as the sole judge of the credibility of witnesses. *Id.* Further, we must view the evidence in a light most favorable to the prevailing party below, who is given the benefit of all reasonable inferences arising from the evidence. *In re McGlynn*, 974 A.2d 525 (Pa. Cmwlth. 2009).

## A. Variance Criteria

"The burden on an applicant seeking a variance is a heavy one, and the reasons for granting the variance must be substantial, serious and compelling." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 149 (Pa. Cmwlth. 2011). To obtain a variance, an applicant must establish five factors summarized as follows: (1) unique physical conditions of the property that impose an unnecessary hardship; (2) because of such unique conditions, the property cannot be developed in strict conformity with the code so the variance is necessary to enable its reasonable use; (3) the hardship has not been created by the applicant; (4) the variance will not alter the essential character of the neighborhood; and, relevant here, (5) "that the variance, if authorized, will represent the minimum variance that will afford relief and **will represent the least modification possible of the regulation in issue**." Trial Ct., slip op. at 7 (unpaginated) (emphasis in original) (quoting Section 910.2(a)(1)-(5) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1998, P.L. 1329, 53 P.S.

6

§10910.2(a)(1)-(5)); *see also Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43, 46-47 (Pa. 1998).

In *Hertzberg*, our Supreme Court explained that "[w]hen seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations." *Id.* at 47. Stated differently, if the proposed use is permitted under the applicable zoning regulations and the variance pertains to the area or space for the use, then the type of variance is dimensional.

Relevant here, the proposed use as a single-family dwelling is expressly permitted in a CM district. Further, the ZHB recognized that the unique characteristics of the Property constitute a hardship necessitating a variance from certain Ordinance provisions. *See* C.L. No. 10. As such, a hardship is established. *Zappala Grp., Inc. v. Zoning Hearing Bd., Town of McCandless*, 810 A.2d 708, 711 (Pa. Cmwlth. 2002) ("A variance, whether labeled dimensional or use, is appropriate 'only where the *property*, not the person, is subject to hardship.'") (emphasis in original)). Nevertheless, "a variance is not warranted where the hardship is related to the landowner's desired use of the land, rather than the land itself . . . ." *Ciferno v. Zoning Hearing Bd. of Twp. of Rostraver* (Pa. Cmwlth., No. 1065 C.D. 2016, filed July 5, 2017), slip op. at 12, 2017 WL 2857056, at *5 (citing *Yeager v. Zoning Hearing Bd. of City of Allentown*, 779 A.2d 595, 598 (Pa. Cmwlth. 2001)).

Case law is clear that "[m]ere economic hardship will not of itself justify a grant of a variance." *Wilson v. Plumstead Twp. Zoning Hearing Bd.*, 936 A.2d 1061, 1069 (Pa. 2007) (citation omitted). "A variance will not be granted because a zoning ordinance deprives the landowner of the most lucrative and

7

profitable uses." *Id.* at 1070. Mere profit to be gained from the proposed development is not alone sufficient grounds for granting a variance.

Because hardship is established, and the use is permitted, only the dimensions of the variance are at issue. However, it remains Developer's burden to prove that the multiple variances it sought are the *minimum* needed to make reasonable use of the Property. Further, it bears emphasizing that the Property where construction is proposed is located in a *conservation management* district. The Ordinance explains the purpose of the CM district as follows:

> The [CM] District consists of valuable natural resources such as woodlands, agricultural soils, floodplains, wetlands, aquifer recharge areas, and areas of steep slopes. The [CM] District is dependent on groundwater as the primary water source. Agriculture is a significant and an important use of land in the [CM] District. For these reasons, uses are permitted in both type and intensity which provide the maximum opportunities for open space in order to protect the natural resources and encourage the continuation of farming activities. Single-family detached, single-family detached cluster, and performance subdivisions are permitted, provided sewage disposal methods shall replenish the water table in accordance with the wastewater policies of the Joint Municipal Comprehensive Plan and the Sewage Facilities Plan (Act 537)[6] of the participating municipality where building or development is proposed. The use and ownership of open space within residential developments shall be designed to achieve the purposes noted above and to be compatible with other uses in the [CM] District.

Ordinance, §305B (emphasis added).

There are two types of variances sought in the Application, those related to lot size and shape and those related to natural features. During argument, counsel for both parties acknowledged that the lot size related variances are not the primary ones at issue. *See also* R.R. at 221a-22a (that the Property is "about a half

---

[6] Section 5 of the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, No. 537, *as amended*, 35 P.S. §750.5.

of an acre [instead of a one-acre lot] . . . drives 6 of the 10 variances" requested); R.R. at 341a.  As the Township acknowledged during oral argument, even an outhouse would violate dimensional requirements of the Ordinance, thus acknowledging that any construction would necessitate multiple variances based on the unique configuration of the Property.  However, certain variances related to natural features, including steep slopes, tree removal, and hydraulic soils, could be minimized by building a smaller home.[7]

Developer requests multiple variances which entail removal of mature trees and fail to protect the levels of floodplain soils and steep slopes that the Ordinance requires in that type of district.  Again, because the Property is entirely on hydraulic soils, a variance is required for any construction.  The critical element here is the *degree* of modification required to retain a minimal effect on the hydraulic soils, steep slopes, and mature trees.  The fifth criterion requires the "*least* modification to the regulation at issue."  Section 910.2(a)(5) of the MPC, 53 P.S. §10910.2(a)(5).  Notwithstanding that a smaller home would have less impact on the natural features sought to be protected in the CM District, Developer admitted that there was no attempt to redesign the house to reduce the footprint or square footage.

Critically, Developer disregards that it bears the burden of proving that the variances sought are the minimum necessary to allow reasonable use of the Property.  There is no indication on this record, nor in Developer's brief, that Developer was unable to make reasonable use of the Property by building a smaller house, with a smaller footprint.

---

[7] Also, the Agreement of Sale (Reproduced Record (R.R.) at 352a-56a) between Developer and the prior owner permitted construction of a 2,200-square-foot dwelling, thus indicating the parties contemplated a smaller dwelling at the time of the sale.  *See* R.R. at 355a.

9

Additionally, contrary to Developer's contentions, it is not the Township's or the objectors' burden to prove that a smaller house may be constructed for reasonable use on the Property. Developer seems under the misapprehension that because there is a clear hardship presented by the size and shape of the Property, it is entitled to a variance as of right when compliance with the Ordinance is not feasible. *See* Developer's Br. at 14 (stating it is "entitled to all relief necessary to allow reasonable use of the Property"). However, this disregards the variance criterion that pertains to the degree of noncompliance with Ordinance provisions.

To the extent that Developer challenges the factfinder's determinations as to credibility and evidentiary weight, its arguments are unavailing. The Trial Court properly deferred to the ZHB as the factfinder. The ZHB may disregard the testimony of any witness, even if uncontradicted. Further, neither this Court nor the Trial Court is in a position to reject those credibility determinations. As such, we reject Developer's argument that the ZHB erred in not affording greater weight to Engineer's testimony.

Regardless, as the Trial Court noted in its opinion, Engineer acknowledged that Developer could reduce the size of the residence and thereby reduce the magnitude of the variances requested. *See* Trial Ct. Op. at 7; *see also* ZHB Dec. at 9; R.R. at 267a-70a, 235a (home is not part of a neighborhood; "[it] is an island of ground by itself"). The size of the house is what requires the encroachment on setbacks, incursion on steep slopes and removal of mature trees. The record contains sufficient information to support the ZHB's finding that the interest in greater profit from a larger dwelling was the driving factor that led to seeking greater dimensional variances. *See* R.R. at 19a, ZHB Dec., F.F. No. 17.

Consequently, there was no evidence presented that the relief requested was the minimum required for reasonable use of the Property as a single-family dwelling. *Id.*, F.F. No. 18. Engineer did not study the square footage of neighboring homes, basing his assessment on his visual inspection only. R.R. at 207a (Principal's Testimony). Principal also noted that the houses in the surrounding area were of varying sizes, so his opinion regarding consistency with the neighborhood was based on architectural features, not house size. *See* R.R. at 212a. Therefore, because Developer did not establish that the variances sought were the minimum necessary to make reasonable use of the Property, the ZHB did not err in denying the Application.

## B. Overcrowding/Detriment to Community

Because Developer did not meet the elements necessary to establish a variance, *i.e.*, that the variances requested were the minimum required for reasonable use, it is unnecessary to address the alleged failure of objectors to show a detriment to the community as a result of the proposed construction.

## IV. Conclusion

For the foregoing reasons, we affirm the Trial Court's order that affirmed the ZHB's decision denying the Application.

_____
J. ANDREW CROMPTON, Judge

Judge Covey did not participate in the decision of this case.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prime Development Group, LP,     :
                Appellant     :
                           :
          v.            :   No.  1281 C.D. 2020
                           :
Upper Makefield Township     :
Zoning Hearing Board         :

# **O R D E R**

**AND NOW**, this 23rd day of December 2021, the order of the Bucks County Court of Common Pleas, dated November 5, 2020, is AFFIRMED.

_____
J. ANDREW CROMPTON, Judge